IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01279

Michael Curran, Christa Curran and
Kelly Cobert, each individually and on
behalf of all others similarly situated,

  Plaintiffs,

v.

Home Partners Holdings LLC, HPA
US1 LLC, and OPVHHJV LLC, d/b/a
Pathlight Property Management,

  Defendants.

---

# ELECTRONICALLY STORED INFORMATION ORDER
---

The parties agree to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.**     **General Principles**

    1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

    2.    The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably

targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B.     ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.     <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of information under the custodian's control.

2.     <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3.     <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.     <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.     ESI Discovery Procedures**

1.      <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.      <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

      a.      Prior to running searches:

            i.      The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

            ii.     After disclosure, the parties will engage in a meet and confer process regarding additional terms sought by the non-producing party.

            iii.    The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search

3

term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

   c. Upon reasonable request, a party shall disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

  3. <u>Format.</u>

   a. ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF.

   b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, presentation files, and drawing files, will be produced in native format.

   c. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

    d.  If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. Attachments shall include files that are sent via hyperlinks.

    e.  The parties shall produce their information in the following format: single-page images and associated multi-page text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party.

    f.  The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

  4.  <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information and the file path for the duplicate file(s) removed during the de-duplication process shall be tracked in a duplicate/other custodian field and duplicate/other custodian file path field in the database load file.

  5.  <u>Email Threading.</u> The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy. Metadata from the lesser included messages shall be produced in the metadata load file.

6. <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged:

FIRSTBATES
LASTBATES
BEGATTACH
ENDATTACH
PARENT_BATES
ATTACHMENT COUNT
ATTACHMENTS
CUSTODIAN
DUPLICATE_CUSTODIANS
DUPLICATE CUSTODIAN_FILEPATHS
FROM
TO
cc
BCC
SUBJECT
DATE_SENT (UTC TIME ZONE)
DATE_RECEIVED (UTC TIME ZONE)
FILENAME
FILE EXTENSION
AUTHOR
DATE_CREATED
DATE_LASTMOD
FILE_SIZE
FILETYPE
RECORDTYPE
FILEPATH
HASH_VALUE
TEXTLINK
NATIVELINK
PAGECOUNT
EMAIL IMPORTANCE (FLAG YES OR NO)
REPLACEMENT (FLAG YES OR NO)
PROD_VOLUME
SUBJECT TO PROTECTIVE ORDER (FLAG YES OR NO)
REDACTION TYPE (REASON FOR REDACTION)
TITLE (E-DOCS)
SUBJECT (E-DOCS)
CONVERSATION
CONVERSATION INDEX
CATEGORIES

COMMENTS
HASCOMMENTS
HASTRACKCHANGES
HIDDENTEXT
KEYWORDS
LANGUAGE
ORIGEXT
SUSPECTEXT
SUSPECTOLE
TEXTXSTATUS

The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

7. <u>Entire Document Families</u>. A Document Family* will be produced together and will be consecutively Bates-numbered, with parent documents followed immediately by all child document(s). Family members that are withheld on the basis of privilege shall be produced as slipsheets indicating the basis of withholding. The Document Family must be identified using the "BegAttach" and "EndAttach" fields designating the beginning and ending of each Document Family, in accordance with C.6.

* "Document Family" means a group of related documents. A "parent document" is an electronic file that includes, attaches, references, or embeds, at least one other electronic file (a "child document") by means of any kind of attachment or hyperlink. A "Document Family" includes messages (e.g., email or chats) sent in any platform used or controlled by Defendants, including the M365 environment, that point to a file that is stored elsewhere within any platform used or controlled by Defendants, including the M365 environment (e.g., OneDrive or SharePoint).

8. <u>Color</u>. Documents or records containing color (for example, graphs, pictures, or color marketing materials) will be produced as color images for each such document or record, to

the extent possible. This provision does not apply to hard copy documents or electronic records containing color logos, signatures, watermarks, or letterhead.

9.      <u>System Files</u>. Electronic file collection will be "De-NISTed", removing commercially available operating system and application files contained on the National Institute of Standards and Technology (NIST) file list. Identification of NIST list matches will be through MD5 Hash values.

10.     <u>Time Zone</u>. When processing ESI, Coordinated Universal Time (UTC) should be selected as the time zone.

11.     <u>Archive File Types</u>. Archive file types (e.g., .zip, .rar) shall be uncompressed for processing. Each file contained within an archive file shall be produced, and the reference to the parent archive file will be provided in the child file name.  If the archive file is itself an attachment, that parent/child relationship shall also be preserved.

12.     <u>Production Media</u>. Documents shall be produced via secure file share/FTP.

13.     <u>Structured data</u>.  To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, it shall be produced in its native format unless not practicable, in which case the producing party shall notify the requesting party and the parties shall promptly meet to attempt to resolve the issue. If the producing party asserts that production of a database in native is not practicable, the producing party may advise of a preference to (1) produce existing reports or reports readily able to be generated from the database that are reasonably responsive to the discovery requests, or (2) design queries in order to produce an extract from the database of relevant and responsive data in a reasonably usable and exportable electronic file (e.g., Excel, Access, CSV or Microsoft SQL server

8

database format). Any production of a database not in its native format should be fully parsible. For enterprise database systems from which data will be produced, the parties will meet and confer as to the available data in the system, the data to be exported, and the format of production on a case by case basis. The producing party agrees to disclose the search parameters used to design the reports and/or queries prior to the production. Upon review of any such parameters and productions from structured databases, the requesting party may make reasonable requests for additional information to explain the database schema, fields, codes, abbreviations, and different report formats, and may object to this method of production.

14. <u>Text Messages</u>. The parties will meet and confer to discuss the format of production of text messages. The parties recognize that there is a wide variety of capabilities available, and it is difficult to assert a standard into a protocol without information as to each party's capabilities.

15. <u>Mobile Application data</u>. The parties will meet and confer to discuss the format of production of mobile application data. The parties recognize that there is a wide variety of capabilities available, and it is difficult to assert a standard into a protocol without information as to each party's capabilities.

16. <u>Collaboration software programs</u>. The parties will meet and confer to discuss the format of production of collaboration program data such as Microsoft TEAMS or Slack. The parties recognize that there is a wide variety of capabilities available, and it is difficult to assert a standard into a protocol without information as to each party's capabilities.

**D.      Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

   b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

   d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

   e. Back-up data that are duplicative of data that are more accessible elsewhere.

   f. Server, system or network logs.

   g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

   h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.** **Privilege**

 1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days after delivering a production unless an earlier deadline is agreed to by the parties.

 2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

 3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

 4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5.     Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.  This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d).  The provisions of Fed. R. Evid. 502(b) do not apply.  Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.  Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.

DATED this __25TH__ day of __OCTOBER__, 2023.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge

AGREED TO:

| | |
|---|---|
| /s/ *Scott C. Harris* <br> Scott C. Harris <br> S. Michael Dunn <br> **Milberg Coleman Bryson** <br> **Phillips Grossman, PLLC** <br> 900 W. Morgan Street <br> Raleigh, NC 27603 <br> sharris@milberg.com <br> michael.dunn@milberg.com <br><br> Anne T. Regan <br> Lindsey L. Larson <br> **Hellmuth & Johnson, PLLC** <br> 8050 West 78th Street <br> Edina, Minnesota 55439 <br> aregan@hijlawfirm.com <br> llabellelarson@hijlawfirm.com <br><br> Susan E. Ellingstad <br> Joseph C. Bourne <br> **Lockridge Grindal Nauen, PLLP** <br> 100 Washington Avenue S. <br> Suite 2200 <br> Minneapolis, MN 55401 <br> seellingstead@locklaw.com <br> jcbourne@locklaw.com <br><br> *Attorneys for Plaintiffs* | /s/ *Carolyn A. Gunkel* <br> Carolyn A. Gunkel <br> **Faegre Drinker Biddle & Reath LLP** <br> 801 Grand Avenue, 33rd Floor <br> Des Moines, IA 50309 <br> carolyn.gunkel@faegredrinker.com <br><br> Michael F. Cockson <br> Diego E. Garcia <br> **Faegre Drinker Biddle & Reath LLP** <br> 2200 Wells Fargo Center <br> 90 South Seventh Street <br> Minneapolis, MN 55402 <br> Michael.cockson@faegredrinker.com <br> Diego.garcia@faegerdrinker.com <br><br> Isaac Smith (53487) <br> **Faegre Drinker Biddle & Reath LLP** <br> 1144 15th Street, Suite 3400 <br> Denver, CO 80202 <br> Isaac.smith@faegredrinker.com <br><br> *Attorneys for Defendants* |